**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey Scott JOLIBOIS, Defendant–**
**Appellant.**

**No. 01–30298.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2002—
Seattle, Washington.

Filed June 24, 2002.

Sheryl Gordon McCloud, Seattle, WA, for the defendant-appellant.

Helen J. Brunner, United States Attorney's Office, Seattle, WA, for the plaintiff-appellee.

Appeal from the United States District Court for the Western District of Washington; Robert J. Bryan, District Judge, Presiding.

Before BRUNETTI, TROTT and McKEOWN, Circuit Judges.

## OPINION

TROTT, Circuit Judge.

The district court revoked Jeffrey Scott Jolibois's ("Jolibois") supervised release and sentenced him to eighteen months imprisonment for possession of methamphetamine and other transgressions. Jolibois contends that the district court mischaracterized his drug possession as a Grade B supervised release violation instead of a Grade C violation. We have jurisdiction over Jolibois's appeal pursuant to 28 U.S.C. § 1291. Jolibois's drug possession was simultaneously a Grade B violation under Washington law and a Grade C violation under federal law. Where illegal conduct constitutes more than one offense, the United States Sentencing Guidelines ("Guidelines") punish that conduct with the most serious penalty available. We, therefore, affirm the district court's Grade B characterization of Jolibois's drug posses-

sion as well as the resulting eighteen-month sentence.

## BACKGROUND

. Jolibois pleaded guilty to various violations of the Lacey Act, 16 U.S.C. §§ 3371–78, including taking geoduck clams from Puget Sound. He was sentenced to thirty-two months in prison and three years of supervised release. In addition to the standard conditions of supervised release, the district court required that Jolibois (1) participate in a drug rehabilitation program, including random drug testing; (2) provide requested financial information to his probation officer; and (3) refrain from working as a commercial diver without prior approval. On appeal, we affirmed Jolibois's sentence. *United States v. Jolibois*, No. 96–30351, 1997 WL 786238, 1997 U.S.App. LEXIS 35771 (9th Cir. Dec. 18, 1997) (unpublished).

After completing his prison term, Jolibois began serving his term of supervised release. Within a short time, Jolibois amassed an impressive array of supervised release violations. Jolibois served thirty days home confinement for driving under the influence and taking a vehicle without the owner's permission. Subsequently, Jolibois was charged with diving commercially without prior permission, using marijuana, failing to participate in a drug treatment program, and failing to appear for drug testing on ten separate occasions. Before the revocation hearing on these violations, the probation office issued Third and Fourth Supplemental Violation reports alleging that Jolibois:

—Committed new State law violations of possession of Methamphetamine and Theft in the Third Degree on or about March 31, 2001.

—Committed a new State law violation of Possession of Amphetamine [or] Methamphetamine on or about June 16, 2001.

Crime laboratory reports confirmed that the substance Jolibois possessed during these incidents was, in fact, methamphetamine.

At the revocation hearing, Jolibois admitted to some of the violations, but he denied the drug possession and theft charges detailed in the probation office's Third and Fourth Supplemental Violation reports. Nevertheless, Jolibois stipulated that the district court could consider the probation office's and the crime laboratory's reports as evidence that drug possession and theft occurred. Relying on these reports, the district court determined that Jolibois had possessed drugs and committed theft and therefore revoked his supervised release.

At sentencing, a dispute arose over whether to characterize Jolibois's drug possessions as Grade B or Grade C violations under Guidelines § 7B1.1(a). In Washington, simple methamphetamine possession is punishable by more than one year, and hence, it is a Grade B violation. Under federal law, however, simple drug possession is punishable by one year or less—a Grade C violation. Cognizant of this divergence between federal and state law, the probation office characterized Jolibois's methamphetamine possessions as Grade B violations.

Jolibois objected to this characterization, arguing that the Guidelines were ambiguous in this situation, and the rule of lenity required the imposition of the softer Grade C sentence. The district court disagreed; it determined that Jolibois committed Grade B violations and sentenced Jolibois to 18 months imprisonment.

Jolibois timely appealed.

## STANDARD OF REVIEW

■ We review de novo the district court's interpretation of the Guidelines. *United States v. Ibarra–Galindo*, 206 F.3d 1337, 1338 (9th Cir.2000).

## DISCUSSION

Section 7B1.1(a) of the Guidelines defines two categories of supervised release violations relevant to Jolibois's appeal:

—Grade B Violations—conduct constituting a federal, state, or local offense punishable by a term of imprisonment exceeding one year.

—Grade C Violations—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

Jolibois's methamphetamine possessions were punishable in Washington by a term of imprisonment exceeding one year under Wash. Rev.Code § 69.50.401(d) (Grade B), but punishable under federal law, 21 U.S.C. § 844(a), by a term of imprisonment of one year or less (Grade C). The parties disagree about the practical effect of this divergence between federal criminal law and Washington law.

■ Jolibois argues that the rule of lenity requires imposition of the less punitive, Grade C sentence because the Guidelines are ambiguous as to whether simple drug possession constitutes a Grade B or a Grade C violation. In general, the rule of lenity requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply. *United States v. Hardy*, 289 F.3d 608, 614 (9th Cir.2002). The rule of lenity applies, however, only if "a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)).

■ In this instance, the rule of lenity is inapplicable because the Guidelines unambiguously address Jolibois's situation. The Guidelines provide: "Where ... *the violation includes conduct that constitutes more than one offense*, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b) (emphasis added). Jolibois's methamphetamine possession constituted more than one offense. It was a Grade B violation under Washington law as well as a Grade C violation under federal law. Because "the grade of the violation is determined by the violation having the most serious grade," the district court properly determined that Jolibois committed a Grade B violation.

The last paragraph of the Sixth Circuit's decision in *United States v. Crace*, 207 F.3d 833 (6th Cir.2000), supports our conclusion. In that case, Crace was charged with possession of cocaine after failing a urinalysis screen. *Id.* at 834–35. The Sixth Circuit determined that under federal law Crace had feloniously possessed drugs and thus committed a Grade B supervised release violation. In the alternative, and most relevant to our case, the Sixth Circuit also observed that simple drug possession was a Class D felony under Kentucky law, and thus a Grade B supervised release violation irrespective of federal classification. *Id.* at 838.

■ The Guidelines' motivating policy with respect to supervised release also supports treating Jolibois's drug possession as a Grade B violation. The Guidelines place violations of state law on equal footing with violations of federal law when deciding whether to revoke supervised release. 18 U.S.C. § 3583(d). By characterizing Jolibois's drug possession as a felony under Washington law, the district court properly considered "what the relevant [state] jurisdiction declares to be a felony"

**1114**

not just how the "federal government demarcates misdemeanors and felonies." *Ibarra–Galindo,* 206 F.3d at 1340 (applying state law characterization of a drug felony even where federal law defined the offense as a misdemeanor).

Finally, Jolibois alters course and argues that the district court could not rely on the drug possessions charged in the probation office's Third and Fourth Supplemental Violation reports because Washington declined to prosecute him for drug possession. We disagree. A violation of supervised release is determined on the basis of the defendant's conduct; it may be found whether Jolibois was ever indicted or convicted of any particular offense. *See* U.S.S.G. § 7B1.1 cmt. n. 1. Relying on the parole office's and crime laboratory's reports, the district court properly determined that Jolibois had possessed drugs. That the state drug possession charges were ultimately dismissed makes no difference.

AFFIRMED.